IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **WILBER ALEMAN APARICIO,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:26-cv-01159** |
| | ) | **Judge Aleta A. Trauger** |
| **CHRISTOPHER BULLOCK, *et al.*,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**MEMORANDUM & ORDER**

Petitioner Wilber Aleman Aparicio has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (Doc. No. 1.) After the court issued an Order to Show Cause (Doc. No. 8), the Government filed a Response (Doc. No. 9), arguing that service of the Petition was improper and that it should nevertheless be dismissed as moot because the Government has released the Petitioner from its detention center. For the following reasons, the Petition will be granted.

## I. BACKGROUND

The Petitioner is 21 years old and is alleged to be a citizen of El Salvador. (Doc. No. 1 ¶¶ 14, 37.) In 2017, the Petitioner entered the United States through the southern border. (*Id.* ¶ 38.) He was quickly detained by immigration authorities and then released to live with his relatives in the United States. (*Id.* ¶ 38.) He later applied for asylum and for derivative status under his brother's visa. (*Id.* ¶ 39.) The Petitioner has lived in the United States for nine years, resides in the Nashville, Tennessee area, holds a work permit valid through 2028, and works in the construction industry. (*Id.* ¶¶ 1, 37.)

On the morning of August 13, 2026, the Petitioner and his construction work crew stopped at a gas station in Lebanon, Tennessee. (*Id.* ¶ 2.) Federal agents from the U.S. Immigration and Customs Enforcement ("ICE") then arrived on the scene and "summarily detained" the Petitioner.

(*Id.* ¶¶ 2, 40.) The next day, the Petitioner filed his Petition. Thereafter, the Government transferred him to a detention center in Memphis, Tennessee and, later, to a detention center in Louisiana. (Doc. No. 11 at 4.) On August 18, 2026, the court issued an Order directing the Government to "show cause as to why the Petition for Writ of Habeas Corpus … should not be granted." (Doc. No. 8.) The court ordered the Government to respond no later than August 21, 2026. (*Id.*)

The day before its court-ordered deadline to respond, the Government released the Petitioner from physical detention at the Louisiana detention center. (Doc. No. 9 at 2.) However, the Government released the Petitioner on an Order of Release on Recognizance (Doc. No. 9-1), which imposed a series of other restrictions and conditions on him. These additional restrictions included the requirement that the Petitioner wear a GPS ankle monitor, report for any hearing or interview before immigration authorities, register "in a sexual deviancy counseling program" and a "substance abuse program" within 14 days, and report to an appointment in Nashville with immigration authorities on September 1, 2026 with "all family members from ages 14 and up." (*Id.* at 4; Doc. No. 11-2 at 1.) The Petitioner asserts that he has no record of criminal convictions and "has lived peaceably in the United States" since his arrival in 2017. (Doc. Nos. 1 ¶ 4; 11 at 2.) He also claims to have no record of sexual deviancy or substance abuse problems (Doc. No. 11 at 5), which the Government does not dispute. Although he lives with relatives, the Petitioner—a full adult at 21 years of age—"has no spouse and no children" and therefore does not understand the basis for the Government's demand that he brings his family members to appointments with immigration authorities. (Doc. No. 11 at 11.)

## II. PROCEDURAL HISTORY

After the Petition was filed and the court issued its Order to Show Cause, the Government filed its Response. (Doc. No. 9.). The Petitioner later filed documents with the court demonstrating that service of the Summonses (Doc. No. 6) and Petition was made on the Attorney General of the

United States, as required by Fed. R. Civ. P. 4(i). (Doc. No. 10 ¶ 3.) The Petitioner also filed a Reply in support of his Petition. (Doc. No. 11.) With the court's leave (Doc. Nos. 14, 18), the parties filed additional briefing in support of their respective positions. (Doc. Nos. 15, 17-1.)

## III. DISCUSSION

The Petitioner asserts that: (1) his physical detention without an individualized bond hearing violates the detention provisions of the Immigration & Nationality Act ("INA") and the Petitioner's due process rights under the Fifth Amendment (Doc. No. 1 ¶¶ 5, 43–49); (2) his Fifth Amendment rights continue to be violated by the Government because the restrictions and conditions imposed on him after his release from the detention center amount to his being in governmental custody; and (3) certain of the additional conditions imposed by the Government are unconstitutional because they are unreasonable and/or vague. (Doc. No. 11 at 9–11.)

The Petitioner seeks a writ of habeas corpus enjoining the Government from (1) transferring him outside of the Middle District of Tennessee while his Petition is pending; and (2) detaining him again under 8 U.S.C. § 1225(b)(2)'s mandatory detention scheme (which the Petitioner claims does not apply to him) instead of 8 U.S.C. § 1226's permissive detention scheme (which the Petitioner claims does apply to him). (Doc. Nos. 1 at 12; 11 at 14.) The Petitioner also seeks an order vacating the additional restrictions and conditions imposed on him after his release from the detention center and permanently enjoining the reimposition of those restrictions and conditions absent a constitutionally adequate pre-deprivation hearing. (Doc. No. 11 at 14.) Finally, the Petitioner asks that the court obtain assurances from the Government that it will comply with 18 U.S.C. § 1357(a)(2) and the Sixth Circuit's decision in *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026) while the Government's agents are undertaking immigration enforcement actions in Tennessee. (Doc. No. 11 at 1, 14.)

In its Response, the Government raises two arguments as to why the Petition should not be granted. First, the Government asserts that "service has not been perfected pursuant to Fed. R. Civ. P. 4" because the Petitioner "has not provided proof that the Attorney General of the United States has been served as required." (Doc. No. 9 at 1.) Second, the Government asserts that the Petitioner cannot seek the relief requested in the Petition because he was released from the detention center on August 20, 2026. (*Id*. at 2.) According to the Government, the fact that the Petitioner was released from the detention center—albeit with additional restrictions and conditions curtailing his liberty that were not in place before his detention—renders his claims "moot" and deprives this court of jurisdiction. (*Id*.) To be clear, the Government has not responded to the Petitioner's claims on their merits. As further detailed below, the court rejects the Government's two arguments.

The court notes that the Government filed its Response before the Petitioner filed additional documents confirming that service of the Summons and Petition complied with Fed. R. Civ. P. 4. Nevertheless, the court would like to address the service requirements relevant here. Rule 4(i) sets forth the requirements for serving the United States, its agencies, corporations, officers, or employees. This subsection provides that service is made when the serving party "send[s] a copy of [the summons and complaint] by registered or certified mail to the civil-process clerk at the United States attorney's office" for the district where the action is brought and "to the Attorney General of the United States at Washington, D.C." Fed. R. Civ. P. 4(i)(1)(ii)–(B). By its own terms, service is proper when the serving party *transmits* the summons and complaint to the government officers specified in subsection (i) by registered or certified mail. To be crystal clear, this rule imposes no requirement that the summons and complaint be *received* by the specified individuals for service to be proper. The court rejects the Government's service argument to the extent it argues

that service was not proper because the Summons' and Petition were not delivered to the specified individuals.

The court also rejects the Government's second argument that this case should be dismissed as moot because the Petitioner has been released from the detention center. (Doc. No. 9 at 2–3; Doc. No. 15.) The Petitioner states that no bond custody determination has taken place in this case (Doc. No. 1 ¶¶ 5, 14, 49), which the Government concedes (Doc. No. 9 at 2.) The Government further concedes that 8 U.S.C. § 1226(a) and the Sixth Circuit's decision in *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026) "controls the outcome of this case." (*Id*.; *see also* Doc. No. 15 at 1.) In *Lopez-Campos*, the Sixth Circuit squarely held that noncitizens like the Petitioner "who did not attempt lawful entry into the United States" and are already in the interior of the United States are "not subject to § 1225(b)(2)(A)'s mandatory detention scheme." *Lopez-Campos v. Raycraft*, 175 F.4th 713, 723 (6th Cir. 2026). Rather, noncitizens like the Petitioner are subject to § 1226(a)'s permissive detention scheme, which requires an individualized bond hearing to justify continued detention to comport with due process requirements. *Id*. at 734.

In essence, the Government asserts that only the *physical detention* of a noncitizen subject to § 1226(a) without an individualized bond hearing violates a noncitizen's Fifth Amendment due process rights under *Lopez-Campos*. As the Government sees it, a noncitizen subject to § 1226(a) can be deprived of cognizable liberty interests without an individualized bond hearing so long as the deprivation falls short of a physical detention at a government facility. The court does not read *Lopez-Campos* that narrowly.

The Sixth Circuit recognized in *Lopez-Campos* that "[n]oncitizens who have 'passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.'" *Lopez-Campos*, 175 F.4th at 732

(quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)). These "traditional standards of fairness" are embodied in our constitutional guarantees and require the Government to afford noncitizens like the Petitioner with "notice" and "an opportunity to be heard." *Id*. (quoting *Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903)).

It is undisputed that the additional restrictions and conditions at issue here—the GPS ankle monitor, the mandatory enrollment in "sexual deviancy counseling" and substance abuse programs, the requirement that family members tag along to the Petitioner's appointments with immigration authorities, etc. (Doc. Nos. 9-1, 11-2)—were not imposed on the Petitioner after an individualized hearing that comports with fundamental due process requirements. The Petitioner was never even provided with a hearing. Instead, the Government demanded that the Petitioner submit to these liberty-restraining measures as a condition to his release from the detention center—a detention that the Government *admits* was constitutionally deficient because no individualized hearing was held as required by 8 U.S.C. § 1226(a) and the Sixth Circuit's decision in *Lopez-Campos*. That admission renders the additional restrictions and conditions imposed on the Petitioner unconstitutional and *void ab initio*.

As *Lopez-Campos* recognized, the Constitution empowers the Government to detain noncitizens during removal proceedings. *Lopez-Campos*, 175 F.4th at 732 (quoting *Demore v. Kim*, 538 U.S. 510, 531 (2003)). That power, however, "is not limitless" and must comply with due process requirements because "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process Clause] protects." *Id*. (quoting *Demore*, 538 U.S. at 531)).

This decision marks some of the limits on that power. The Government cannot detain a noncitizen, knowingly deprive him of his due process rights to be heard and challenge his detention

in a hearing and attempt to avoid scrutiny of that constitutional violation by releasing him from physical custody—although with other restrictions placed on his liberty that otherwise did not exist before his detention.[1] *Hensley v. Mun. Ct., San Jose Milpitas Jud. Dist., Santa Clara Cnty., California*, 411 U.S. 345, 348 (1973) (petitioner released on his own recognizance is "in custody" due to "the conditions imposed on petitioner as the price of his release."); *Lawrence v. 48th Dist. Ct.*, 560 F.3d 475, 480 (6th Cir. 2009) (concluding that "personal recognizance bonds categorically suffice as restraints on liberty."); *Orellana Juarez v. Moniz*, 788 F. Supp. 3d 61, 68 (D. Mass. 2025) (finding habeas petitioner forced to wear GPS device on his ankle "remains in custody in violation of the Due Process Clause of the Fifth Amendment"); *Campbell v. Almodovar*, No. 1:25-cv-09509, 2025 WL 3626099, at *1 (S.D.N.Y. Dec. 15, 2025) (same); *Batz Barreno v. Baltasar*, 816 F. Supp. 3d 1255, 1258 (D. Colo. 2026) (same). Judicial endorsement of such evasive conduct would threaten precisely what the Due Process Clause demands: the freedom from restraints on liberty absent legally sufficient process and procedures.

## IV. CONCLUSION

For the foregoing reasons, the Petitioner is entitled to relief under § 2241. The Government has violated the Petitioner's rights under the Due Process Clause of the Fifth Amendment by imposing restrictions and conditions on the Petitioner's liberty after failing to provide him with an individualized bond hearing following his arrest.

[1] To be sure, the Sixth Circuit has found that a felon convicted of child sexual abuse does not remain "in custody" after his prison term simply because he is subject to electronic ankle monitoring. *Corridore v. Washington*, 71 F.4th 491, 497 (6th Cir. 2023). However, the factual circumstances of *Corridore* are distinguishable from the facts here because, unlike the Petitioner, the electronic ankle monitoring at issue in *Corridore* was a collateral consequence of the felon's conviction. *Id*. at 500. That decision was limited to "the sex-offender context," (*id*. at 496)—a context not implicated by the facts of this case.

For the reasons stated herein, the Petition is **GRANTED**. The Government is **ENJOINED** from transferring the Petitioner outside of the Middle District of Tennessee while his Petition is pending. The Government is **PERMANENTLY ENJOINED** from further pursuing the Petitioner for arrest and detention under 8 U.S.C. § 1225(b)(2). The restrictions and conditions placed on the Petitioner by the Government following his arrest on August 13, 2026 (as described in the Petition) are **VOID** and of **NO FURTHER EFFECT** and the Government is **PERMANENTLY ENJOINED** from reimposing those restrictions and conditions, absent an individualized bond hearing that complies with all statutory and constitutional requirements. The Government is **ORDERED** to remove the GPS ankle monitor no later than 12 p.m. CST on September 30, 2026. The Government is **FURTHER ORDERED** to file a Status Report with the court no later than 5 p.m. CST on September 30, 2026 to certify compliance with this Order.

At this time, the court declines to request assurances from the Government that it will comply with 18 U.S.C. § 1357(a)(2) and the Sixth Circuit's decision in *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026) while the Government's agents are undertaking operations in Tennessee. Finally, the Petitioner's request for attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412, must be made by a separate motion.

Having determined that the Petitioner's procedural due process rights were violated, and that he is entitled to a writ of habeas corpus on that basis, the court does not address his other arguments that certain of the restrictions and conditions placed on him were unconstitutionally vague and/or unreasonable.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge